Black, J.
This is an action for breach of contract and deceit brought on August 17, 1976, by the plaintiffs, Stephen Kolakowski and Emil Kolakowski, against the defendant, Leigh D. Finney, to which the defendant duly filed an answer. Sometime prior to July 16, 1981, the plaintiffs were allowed to amend the complaint and the defendant filed a timely amended answer. The plaintiffs also filed a Motion for Partial Summary Judgment and it was denied October 20, 1981. At one point, the case was dismissed by reason of the plaintiffs’ failure to answer interrogatories. The dismissal was set aside March 31, 1982.
The case was heard November 3, 1982. Prior to trial, the court advised the plaintiffs that it lacked jurisdiction to grant certain relief sought in the complaint, as amended, and the plaintiffs agreed to waive all such counts. Therefore, the trial proceeded solely on the counts for breach of contract and deceit. There was evidence that a written agreement had been entered into on July 1,1973, by and between the plaintiffs, Stephen Kolakowski and Emil Kolakowski, as sellers and Leigh D. Finney, as buyer providing for the purchase by the defendant of all right, title and interest in the business known as “Reinhardt Signs” then owned and operated by the plaintiffs in the City of Fall River, Massachusetts. The agreement specifically provided that all stock in trade, fixtures, equipment, tools, effects, goodwill, and real estate having a stated value of $50,000 was to be transferred to the “buyer or his nominee”. The “buyer” agreed to pay $50,000 therefor by payment of $2,500 upon execution of the agreement, an additional $22,500 at the time of performance and the balance as follows:
(c) Balance of Twenty-five Thousand to be paid at the rate of Five Thousand ($5,000) Dollars which includes imputed interest at the rate of 6% per year at the end of each said year if the net profit after taxes accuring each year ending June 30th to the business of Reinhardt Signs is sufficient in each said year to cover that amount and, if not, in each and every year thereafter when such sufficient amount exists until fully paid. The Buyer shall pay to the Seller six percent (6%) interest per annum each and every year on the unpaid balance on all monies owed for each said year, if any.
The agreement further provided that the sale would be completed on or before August 16,1973, and that the plaintiffs would work for aperiod of one (1) year as *361 employees of Leigh D. Finney. All assets were duly transferred by the plaintiffs to the defendant in accordance with the terms of the agreement and the sum of $25,000 was paid as provided therein. The further sum of $300 interest was paid one year later. No other payments have been made by the defendant.
On April 9, 1974, a letter was received by the plaintiffs from the defendant’s counsel which provided:
I have been contacted by the accountant for Finney Advertising Companies, Inc., which is the nominee referred to in the above mentioned agreement. Inasmuch as Finney Advertising Companies Inc. is fulfilling Mr. Finney’s part of the contract with you, would you kindly acknowledge by signing the enclosed copy of this letter and returning to me in the return envelope that your salaries are being paid by Finney Advertising Companies, Inc. as the nominee superceding Mr. Finney’s position in his agreement with you. [Emphasis added.]
Both Stephen and Emil Kolvakowski gave written acknowledgment of receipt of the letter. Subsequently, Finney Advertising Companies, Inc. became a defunct corporation.
At the conclusion of trial, the defendant submitted the requests for rulings set forth below (the court’s action thereon is noted in parenthesis):
1. The evidence warrants a finding that plaintiffs agreed to the substitution of a nominee of the defendant (Finney Advertising Companies, Inc.) and the defendant Leigh D. Finney was not liable thereafter April 9, 1974, as a party to the Agreement of July 1, 1973.
(Denied.)
2. The evidence warrants a finding that the defendant’s business known as Reinhardt Signs which he purchased from the plaintiffs never made a net profit of $5000 or more as contemplated by the Agreement (Exhibit #1).
(Denied.)
3. The evidence warrants a finding that the defendant is not laible to pay the plaintiffs the additional purchase price of $25,000.
(Allowed, but I do not so find.)
4. The Agreement of July 1,1973 (Exhibit # 1) is legal and binding on the parties having been entered into freely and knowingly for valid consideration.
(Allowed.)
5. The Agreement (Exhibit #1) entitles the defendant (buyer) to substitute a nominee, which he did, in his place and stead. (Page 1, Paragraph 1 of Agreement dated July 1,1973, and letter dated April 9, 1974 assented to by plaintiffs).
(Denied.)
6. Plaintiffs’ proof of damages which entails proof that Reinhardt Signs made a net profit each of $5,000 or more was not proven by a preponderance of the fair and credible evidence, not surmise, conjecture or speculation, and the burden cannot be shifted to the defendant to prove he did not make a profit. Hanna v. Shaw, 244 Mass. 57; Smith v. Hill, 232 Mass. 188; Callahan v. Fleischman Co., 262 Mass. 437; Rocha v. Alber, 302 Mass. 155; Sargent v. Massachusetts Acci. Co., 307 Mass. 246.
(Denied.)
7. Parol evidence is inadmissible to vary the terms of written Agreement dated July 1, 1973, (Exhibit#!). Wooley v. Cobb, 165 Mass. 503.
*362 (Allowed.)
The court made the following findings of fact:
Through this action, the plaintiffs seek to recover money allegedly due under a contract, dated July 1,1973, covering the purchase and sale of the business, including the real estate and all assets, conducted by them as co-partners under the name of Reinhardt Signs. The complaint also seeks relief for several matters beyond jurisdiction of this Court. After the witnesses were sworn, but prior to the presentation of any evidence, the Court sua sponte, notified the plaintiff that it had no jurisdiction to entertain the relief requested beyond the counts for breach of contract and deceit. The plaintiffs agreed to waive all counts beyond the jurisdiction of the Court and trial proceeded solely on the counts for breach of contract and deceit. On the basis of all of the evidence presented and the facts as hereinafter found, I find no fraud or deceit and order judgment for the defendant on Count VIII.
The agreement in question provided for the sale of real estate and all of the assets of Reinhardt Signs to the defendant for the sum of $50,000. The sales price was apportioned as follows:
Stock in Trade $4,700.00
Fixtures 200.00
Equipment, Tools & Effects 7,500.00
Covenant Not to Compete 7,500.00
Goodwill As A Going Concern 100.00
Real Estate 30,000.00
The consideration was payable as follows: - $2500 on signing agreement: $22,500 at the time of performance; and the balance of $25,000 to be paid at the rate of‘$5,000 which includes imputed interest at the rate of 6% per year at the end of each said year if the net profit after taxes accruing each year ending June 30th, to the business of Reinhardt Signs is sufficient in each said year to cover that amount and, if not, in each and every year thereafter when such sufficient amount exists until fully paid’.
Through the use of the term ‘imputed interest’, it would appear that no interest was intended to be paid unless the $5,000 was not paid in any year, in which case interest would be paid at the rate of 6%. After the contract was executed, the plaintiffs were hired by the defendant in accordance with paragraph 11 of the agreement.
In April of 1974, the plaintiffs acknowledged receipt of a letter which purported to nominate Finney Advertising Companies, Inc: in place of the defendant under the contract. The Court finds that this letter confirmed that the plaintiffs were in fact working as per the agreement and that they were being paid by the corporation rather than the defendant individually. With regard to the executed portions of the contract, there could be no nominee. Notwithstanding the defendant’s attempt to shift the $25,000 obligation to the now defunct corporation, he still remains personally liable.
The defendant’s position seems to be that in the absence of a ‘profit after taxes’ he is excused from honoring his obligation. He further declares that the corporation, which he nominated to assume this obligation, and which is now defunct, never made a profit. This contract was entered into with the defendant, and the assets of the business including the real estate were transferred to him. All that remains is the *363 payment of the money. The defendant cannot escape his liability by nominating a corporation to assume payment of the amount due.
The defendant breached the contract when he failed to pay the annual interest due in the event no profit was made. The annual interest due at this point would be about $1500 based on a debt of $25,000. The defendant’s default on interest alone as of July 1, 1982 is in excess of $10,000.
The contract was drawn by defendant’s counsel and there is no question that the defendant received tangible assets valued at $42,400.
The plaintiffs were not represented by counsel and thus far have received $25,000 plus the first year’s interest of $300. I find that the plaintiffs have not breached their convenant not to compete.
The only other asset is the goodwill which the defendant agreed to purchase for $100 and now says that since it was never able to generate a profit, he ought not to pay the $25,000 balance due.
I find for the plaintiffs in the sum of $25,000 plus interest of $1703.00, computed to date of commencement of this action, plus interest and costs thereafter.
This appeal presents two issues: (1) Did the defendant remain personally liable on the contract when he transferred the business to Finney Advertising Companies , Inc., and (2) Did the defendant breach the agreement by failing to nay the remaining $25,000 of the purchase price under the agreement?
With respect to whether the defendant remained personally liable under the contract, we note that Article 1 of the agreement provided that the assets purchased by the buyer were to be transferred to the “buyer or his nominee” at the time of performance whereas Article 2 provided that the “buyer” alone was to pay the entire $50,000 purchase price. Clearly, Article 1 became fully executed at the time of performance or when the assets covered by agreement were transferred by the plaintiffs to the defendant. Article 2 makes no provision for the nomination or assumption by any person of the payment obligation of the defendant. It should be pointed out that since the entire agreement was prepared by defendant’s attorney and signed by the plaintiffs without the benefit of counsel, the agreement must be strictly construed against the defendant [Massachusetts Turnpike Authority v. Perini Corp., 349 Mass. 448, 454 (1965); Lewis National Corp. v. Collentro, 33 Mass. App. Dec. 86, 96; cf. Shea v. Bay State Gas Co., 1981 Mass Adv. Sh. 765, 772].
Perhaps even more importantly the word “nominee” ordinarily indicates one designated to act for another as his/her representative in a rather limited sense [Schuh Trading Co. v. Commissioner of Internal Revenue, 95 F.2d 404, 411 (7th Cir. 1938)]. In its commonly accepted meaning, the word “nominee” connotes the delegation of authority to the nominee in a representative capacity only, and does not connote the transfer or assignment to the nominee of any property in or ownership of the rights of the person nominating him/her [Cisco v. Van Lew, 60 Cal. App. 2d 575, 583-584, 141 P.2d 433, 438 (1943); Middle East Trading & Marine Service, Inc. v. Mercantile Finance Corp., 49 Ill. App. 3d 222, 364 N.E.2d 886, 892 (1977); see Lee v. Ravanis, 349 Mass. 742, 745 (1965)]. Even if there had been an assignment by the defendant would not be personally released from his obligation under the agreement unless all the parties to the contract so agreed [Ross v. Radebaugh, 17 Mass. App. Dec. 182, 188 (1961)]. “There is no novation until the creditor accepts the new debtor in full substitution for the former one and this completely releases the old debt.” [Tudor Press, Inc. v. University Distributing Co., 292 Mass. 339 (1935); Larson v. Jeffrey-Nichols *364 Motor Co., 279 Mass. 362, 365-366 (1932)].
Mere acknowledgment by the plaintiffs that they would be receiving their salaries from the "nominee” corporation, Finney Advertising Companies, Inc., could not, by any stretch of the imagination, constitute a release of the defendant from his obligations under the aggreement. In a similar case, the Supreme Judicial Court found that mere acceptance of salary payments from a successor corporation was not enough to constitute a novation, stating that: "While the plaintiff received his salary check from the Consolidated Press Company, after it was organized, it does not show that he intended to release Lang [the corporate promoter] from the obligation he had assumed ... .It is plain that the facts fail to show a novation which would discharge Lang from his undertaking.” [Mansfield v. Lang, 293 Mass. 386, 392 (1936); see also [Tudor Press, Inc. v. University Distributing Co., supra at 341], We conclude, therefore, that the trial judge correctly ruled that the April 9,1974 letter did not release the defendant from his obligation to make payment of the balance due under the agreement.
As respects the trial judge’s finding that the defendant had breached the contract, it seems to be the defendant’s position that in the absence of a "profit after taxes” he-is excused from honoring his payment obligation. He further declares that the corporation which he nominated to assume the obligations under the contract is now defunct and never made a profit. Since a novation was never effected, the status and earnings of Finney Advertising Companies, Inc., are irrelevant to the determination of the issues. A careful reading of paragraph 2(c) of the agreement (set forth above) does not suggest that it was the intention or contemplation of the parties that the defendant was to be totally relieved of his payment obligation if the "net profit after taxes” accruing each year was inadequate to pay the particular $5,000 increment then due. It does not so state; it provides that the "Buyer.. .agrees to pay therefor to the seller Fifty Thousand.. .Dollars, payable as follows ...” It does not state that the buyer is obligated to pay the $25,000 balance only if the business turned five sufficiently profitable years. We would reiterate that since the agreement was drafted by the defendant’s attorney and ambiguity must be construed strictly against the defendant (see cases cited supra).
Also, it is the law of the Commonwealth that: "Where, as here, the contract has been fully performed on one side, the law will not permit the injustice of the other party retaining the benefit without payment therefore, unless compelled by some inexorable rule.” [Phelps v. Shawprint, Inc., 328 Mass. 352, 355 (1952); Silver v. Craves, 210 Mass. 26, 30 (1911)].
The only conceivable “inexorable rule” that could prevent the plaintiffs in the instant case from enforcing this contract is its indefiniteness. No date was specified by which full payment of the remaining $25,000 was to be made. This indefiniteness does not, however, prevent enforcement of the contract payment terms. “A contract is not to be struck down because one of its material provisions is stated in broad and general terms if, when applied to the transaction and construed in the light of the attending circumstances, the meaning to be attributed to it can be interpreted with reasonable certainty so that the rights and obligations of the parties can be fixed and determined.” [Gilbert v. Tolles, 18 Mass. App. dec. 13, 17-18 (1962); Cygan v. Megathlin, 326 Mass. 732, 733-734 (1951)].
To find that the defendant is exonerated from further obligation to make payment of the $25,000 balance due under the circumstances here presented would border on the unconscionable, particularly in light of the fact that the defendant received assets having a value of a minimum of $42,400. The de *365 fendant has committed a total breach of the contract in this case. The combination of the definite contract price, and the inability of the defendant to meet the installment payment terms as outlined in the contract, merits the award of the remaining money due to the plaintiff.
We find no error in the trial judge’s findings or conclusions nor in his action on the defendant’s Requests for Rulings. The report is, therefore, dismissed.