*Municipal Court of the City of Boston*

No. 4933

**BILANGE COFFEE SHOP, INC.**

v.

**SODA FOUNTAINS, INC., ET AL**

(May 13 — August 10, 1960)

*Present:* Roberts, J. (Presiding), Fox and Glynn, JJ.

*Roberts, J.* This is a petition to establish a draft report which the trial court disallowed. G. L. (Ter. Ed.) c. 231, §108.

The petitioner as plaintiff commenced an action in tort against the respondent to recover for the alleged conversion of personal property on or about the second day of January, 1959. The respondent as defendant in his answer to that cause pleaded a general denial, a plea of abandonment of the property involved and an allegation that the goods in question were repossessed by the respondent upon default of payment by the petitioner under the terms of a conditional sales contract.

With the issues thus joined the original cause came on for trial on January 18, 1960 and at its conclusion the petitioner filed fourteen requests for rulings all of which save the first were denied, and the judge found there was no conversion and made the following detailed "Findings of Fact":

"I find that on January 15, 1959 the officers of the plaintiff corporation were about to vacate the premises occupied by the corporation in Scollay Square, Boston; that at the time there were in the premises store fixtures on which the corporation was indebted to Soda Fountains, Inc. to the extent of $1,806; that at the same time the corporation was indebted to the landlord in the amount of $440.

"I further find that on the morning of January 15, 1959 the officers of the plaintiff corporation and Mr. Stam, an officer of Soda Fountains, Inc., and Herbert Salter, an agent

of the landlord, conferred with respect to the removal from the premises. I find that Mr. Stam suggested to the officers of the plaintiff corporation ·that if the restaurant was dismantled for the purposes of sale or removal a substantial part of the value would be lost and that a sale of the detached fixtures would bring very little. It was suggested by Mr. Stam that they allow everything to remain in the premises so that the place might be disposed of as a going concern, in that manner enabling the parties concerned to realize more money, and the suggestion was made that there might be something left for the officers of the corporation.

"I. find that the officers of the plaintiff corporation agreed to this arrangement and walked out; that at the time they made this agreement the plaintiff corporation was indebted in an amount in excess of $8500, and that aside from the articles owned by Soda Fountains, Inc. on which there was an $1806 balance there was in addition a refrigerator owned by the Whiting Milk Company and certain fixtures owned by the landlord. There were certain restaurant fixtures and items in the premises which belonged to the plaintiff corporation, but there was no discussion with respect to them or any undertaking by the defendants specifically with respect to them.

"I find that in pursuance of the above arrangement the defendants secured on February 16, 1959 a tenant for the premises, which tenant operated the place for seven or eight

months under the name of the 'Scollay Square Coffee Shop, Inc.'; that this tenant through its treasurer, Mary J. Haskit, signed an agreement to take over all the personal property in the premises in the amount of $3000, and to pay on account of same a down payment of $600, and 24 successive monthly installments of $112. I find that under this agreement the defendants received $824 and nothing more, and that some time in October or November the Scollay Square Coffee Shop, Inc. abandoned the premises; that thereafter the fixtures were stored away in premises adjoining the original locale.

"I find that the value of these articles is less than the balance due to Soda Fountains, Inc.

"I find that at no time have the defendants realized anything approximating the amount of their lien on the goods in the store, and that they are not accountable to the plaintiff for anything. If material, I find that at all times the defendants acted in good faith and made a genuine effort to salvage as much as possible out of the situation as they had undertaken with the plaintiff officers at the time of the abandonment of the place. I do not find that the plaintiffs at any time tendered the balance due on the goods or made any serious demand for them from the defendants. However, if material, I find that after the officers of the plaintiff corporation learned of the arrangement made with Scollay Square Coffee Shop, Inc. they did call on the defendants and ask

for a statement as to the balance due, stating that they proposed to pay the balance and take out their goods. I do not find that this request was made in good faith or that the officers of the plaintiff corporation ever tendered the balance they were informed was due.

"I do not find that there was any conversion committed by any of the defendants. I find for the defendants."

It appeared that the petitioner duly filed a "draft report" which after due notice and hearing the trial court refused to allow for the apparent reason that it did not contain all of the evidence material to the issues raised by the petitioner's requests. On this occasion the petitioner was given leave to revise and submit an amended draft report.

Subsequently the petitioner filed an "amended draft report" which was disallowed by the trial justice who filed in writing his certificate of disallowance which as far as material follows:

"I have disallowed this report for the reason that the report does not contain any element of the defendants' version of the evidence; nor does the report recite the defendants' evidence as it was given in court. - - - - - The facts in the case are substantially as set forth in the finding of facts. Furthermore many of the objections as set forth in this report were not made during the trial; nor was any report requested with respect to any matter of evidence on trial procedure".

At the hearing on the petition, (*Haines v.*

*Winthrop Square Cafe, Inc.,* 335 Mass. 152) it became apparent that both the original and amended draft report failed to set forth evidence given in favor of the respondent and did not fully report the respondent's evidence as it was given before the trial justice. Further it could not be found that the petitioner reported all of the evidence material to issues raised by the report.

Specifically the petitioner failed to report all the evidence concerning the conference held between the parties involved on January 15, 1955 where it could be found that the petitioner voluntarily relinquished the possession of the articles under an arrangement which completely negatives a finding that there was a conversion. Under the circumstances of this case where the petitioner was in default of its payments under conditional sales contracts and was vacating the premises for failure to pay rent under its lease it seems clear that the petitioner has failed fundamentally to maintain the truth of its petition.

Further the petition is fatally defective in that it sets up several alleged exceptions to the introduction of evidence given at the trial which had no standing since inspection of the original papers and docket entries fails to show that they were perfected in accordance with G. L. (Ter. Ed.) c. 231, §108. *Krock v. Consolidated Mines & Power,* 286 Mass. 177-179.

The trial justice had the right to have the

draft report conform to what he believed to be the truth. *Santosuosso v. Della Russo,* 300 Mass. 247-249; *Haines v. Winthrop Sq. Cafe, Inc.,* 335 Mass. 152; Compare: *Maguire, petitioner,* 340 Mass. 12.

The draft report was not conformable to the facts, and the petition is disallowed.

James W. Kirk of Boston, for the Petitioner.